### Gloria AIKEN, Plaintiff,

v.

### BUCKS ASSOCIATION FOR RETARDED CITIZENS, INC. (B.A.R.C.), Robert Schram, Scott Kulp, Joan Baker, and Joanne Schmalz, Defendants.

### Civ. A. No. 91–2672.

United States District Court, E.D. Pennsylvania.

July 14, 1992.

Anita F. Alberts, Rathgeber, Alberts & Egan, Doylestown, Pa., for plaintiff.

Bruce J. Kasten, Duane, Morris & Heckscher, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

### INTRODUCTION

There are presently two (2) motions before me in this employment discrimination case, both filed on behalf of plaintiff Gloria Aiken ("Aiken"). The first motion requests that I enter final judgment under Fed.R.Civ.P. 54(b) against plaintiff Aiken on Count IV and Count V of her complaint (Document No. 16), which allege, respectively, supplemental state law claims of wrongful discharge and intentional infliction of emotional distress. I dismissed these counts, as well as a portion of Count III, under my Order of November 14, 1991 (Document No. 9) after granting a motion of the defendants to dismiss for failure to state a claim upon which relief can be granted. Pursuant to a subsequent Order issued on January 22, 1992 (Document No. 20), I denied a motion of the plaintiff for reconsideration of my dismissal of Counts IV and V.

The second motion asks that I allow plaintiff to amend Count I and Count II of her complaint (Document No. 21), containing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.* (West 1981 & Supp.1992), and the Civil Rights Act of 1866, 42 U.S.C.A. § 1981 (West 1981 & Supp.1992), respectively, so that she may incorporate amendments to these statutes enacted as part of the Civil Rights Act of 1991 ("the Act"), Pub.L. No. 102–166, 105 Stat. 1071 (1991). The Act was signed into law by President Bush on November 21, 1991.

Jurisdiction is founded upon the existence of a federal question under 28 U.S.C.A. § 1331 (West 1966 & Supp.1992). Upon consideration of the motions of the plaintiff, the responses of the defendants thereto, and for the reasons which follow, I shall deny both motions.

### DISCUSSION

*The Rule 54(b) Motion of Plaintiff Aiken*

■ In *Chalfin v. Beverly Enter., Inc.,* 745 F.Supp. 1117 (E.D.Pa.1990), I reviewed the analysis to be undertaken when a party requests certification of final judgment pursuant to Fed.R.Civ.P. 54(b). Under Rule 54(b), a court possesses the discretion to enter a final judgment relating to one or more claims or parties. *Id.* at 1121 (citing *Curtiss–Wright Corp. v. Gen. Elec. Co.,* 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980); Fed.R.Civ.P. 54(b) advisory committee notes; 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Pro-*

*cedure* § 2654, at 38 (1990)). Rule 54(b) motions should not be entered routinely, however, or as a courtesy or accommodation to counsel, but only in the "'infrequent harsh case' as an instrument for the improved administration of justice.'" *Id.* (quoting *Allis–Chalmers Corp. v. Philadelphia Elec. Co.*, 521 F.2d 360, 363 (3d Cir.1975)).

The responsibility of a district court under a Rule 54(b) motion is to act as a "dispatcher," determining in its discretion the appropriate time when a final decision in an action with multiple claims is ready for appeal. *Curtiss–Wright Corp.*, 446 U.S. at 8, 100 S.Ct. at 1465. In fulfilling this function, the district court must consider the interests of judicial administration as well as the equities of the particular case under review. *Id.* A review of the interests of judicial administration is required to make sure that the use of Rule 54(b) in a given case comports with the "historic federal policy against piecemeal appeals." *Id.*

■ Courts consider many factors in examining requests for certification under Rule 54(b), such as the relationship of the adjudicated and unadjudicated claims, the possibility that the need for appellate review might be mooted by future developments in the district court, the possibility that the reviewing court might be obliged to consider the same issue a second time, and miscellaneous factors such as delay, economic and solvency considerations, shortening the time of the trial, and the frivolity of competing claims. *Chalfin*, 745 F.Supp. at 1121 (citing *Allis–Chalmers Corp.*, 521 F.2d at 364). *See also Curtiss–Wright Corp.*, 446 U.S. at 8, 100 S.Ct. at 1465 (proper for district judge to have considered whether claims under review separable from claims remaining to be adjudicated).

In *Chalfin*, the plaintiffs, Arlene Chalfin and her family, brought claims under the Social Security Act, the Pennsylvania Health Care Facilities Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and state common law claims for breach of contract and intentional infliction of emotional distress. *Chalfin,*

745 F.Supp. at 1118–19. I dismissed all of the claims of plaintiff Arlene Chalfin except for her claims alleging violations of the unfair trade practices and consumer protection statute, and intentional infliction of emotional distress. *Id.* at 1119 n. 3. I also dismissed all of the claims asserted by the other plaintiffs except for their breach of contract claim. *Id.* I found that the claims that remained pending were related to the dismissed claims and included the same underlying facts. *Id.* at 1121. As a result, I found that certification of the dismissed claims as final judgments would result in an inefficient use of the appellate court's resources. *Id.* (citing *Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698 (7th Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984)). Consequently, I concluded that the interests of sound judicial administration and justice would not be advanced by entering a final judgment on the dismissed claims. *Id.* at 1121–22 (citing *Curtiss–Wright*, 446 U.S. at 5, 100 S.Ct. at 1463).

■ The commonality of facts among the pending and dismissed claims which plagued the motion for certification in *Chalfin* also exists in this case. Plaintiff Aiken seeks a certification of final judgment under Rule 54(b) on Count IV and Count V of her complaint, asserting, respectively, state law claims of wrongful discharge and intentional infliction of emotional distress. Although each cause of action in the complaint asserts a different legal theory, all arise out of a common core of operative facts. Plaintiff acknowledges this in her brief in support of her motion for certification: "Plaintiff seeks to have all claims tried together because they arise from the same set of operative facts, but the standard of proof is different for the federal and state law claims." *See* Memorandum of Law Supporting Plaintiff's Motion for Rule 54(b) Certification ("Plaintiff's Memo.") at 3.

The *leitmotif* or dominant theme of the complaint of plaintiff Aiken is that she was harassed and discriminated against because of her race. Thus, in Count I of the complaint, plaintiff alleges that she was dis-

criminated against through constant racial harassment, which ultimately forced her to resign from her position with defendant Bucks Association for Retarded Citizens, Inc. ("BARC"). Complaint at ¶¶ 34, 36–40. Count II asserts that the racial harassment and discrimination plaintiff suffered on the job deprived her of her right to make and enforce contracts equal to the right of white citizens and to travel freely. *Id.* at ¶¶ 48–49, 52–53, 56. In Count III, plaintiff Aiken contends that certain defendants formed a conspiracy to discriminate against her because of her race. *Id.* at ¶¶ 61–67. Count IV claims that the racial harassment directed at plaintiff was designed to punish her for her attempted "whistleblowing," with the intended outcome that plaintiff would be forced to resign and, therefore, not continue to threaten the jobs of the defendants. *Id.* at ¶¶ 74–75. Lastly, in Count V, plaintiff Aiken claims that the pervasive atmosphere of racial harassment that flourished at BARC because of the defendants' conduct caused her emotional distress. *Id.* at ¶¶ 83–84.

As I found in *Chalfin*, it constitutes an inefficient use of judicial resources to certify dismissed claims for appeal where these claims and the pending claims rest upon a common core of operative facts. *Chalfin*, 745 F.Supp. at 1121–22. In the instance that Count IV and Count V of the complaint are certified for appeal, the court of appeals would essentially have to review plaintiff's allegations that she was harassed and discriminated against because of her race and consequently forced to resign from her job. These same issues would confront the court of appeals if a judgment on Counts I, II or III were subsequently appealed. Denying the motion for certification allows the court of appeals, if an appeal is taken, to resolve the common nucleus of allegations common to each of the counts in the same appeal.

Accordingly, the motion of plaintiff Aiken for entry of a final judgment under Fed.R.Civ.P. 54(b) against her on Count IV and Count V of the complaint shall be denied.

*The Motion to Amend Count I and Count II of the Complaint*

Plaintiff Aiken has also filed a motion to amend Count I and Count II of her complaint, containing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C.A. § 1981, respectively, to incorporate amendments to these statutes enacted as part of the Civil Rights Act of 1991.[1] As noted above, the Act was signed into law on November 21, 1991. Resolution of this motion requires the examination of an issue that is quickly spreading throughout the federal judiciary, namely, whether the Act may be applied retroactively to cases pending at the time the Act became law.[2]

---

1. As explained recently by Judge Posner of the Court of Appeals for the Seventh Circuit, the question of whether a new statute should be applied retroactively actually takes four (4) different forms. New legislation could be applied

 (1) to cases filed and completed before the effective date of the statute that arise from acts committed before that effective date, (2) to cases filed before the effective date of the statute, but not completed by that date, that arise from acts committed before that date, (3) to cases filed after the effective date that arise from acts committed before that date, [and] (4) to cases in any of these categories but in which the conduct complained of straddles the effective date of the statute.

 *Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225, 227 (7th Cir.1992). As in *Luddington,* the question of retroactivity here falls within category two (2), because Plaintiff Aiken filed her complaint on April 25, 1991 for alleged conduct occurring before enactment of the Act. *Lud-*

*dington,* 966 F.2d at 227; Complaint at ¶¶ 33, 45, 67, and 80.

2. Court decisions examining the retroactivity of the Act seem to be proliferating on a daily basis. Although the issue of the retroactivity of the Act has yet to be addressed by the Court of Appeals for the Third Circuit, four (4) circuit courts of appeal have examined the question, each concluding that the Act should not be retroactively applied. *See Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363 (5th Cir.1992); *Rush v. McDonald's Corp.,* 966 F.2d 1104 (7th Cir.1992); *Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225 (7th Cir. 1992); *Huey v. Sullivan,* 1992 WL 105393, No. 91–2908 WM, 1992 U.S.App. LEXIS 11303 (8th Cir. May 21, 1992); *Mozee v. American Commercial Marine Service Co.,* 963 F.2d 929 (7th Cir. 1992); *Fray v. The Omaha World Herald Co.,* 960 F.2d 1370 (8th Cir.1992); *Vogel v. The City of Cincinnati,* 959 F.2d 594 (6th Cir.1992).

 In addition, no less than eleven (11) decisions on the subject have emanated from the district

### 1. The Amendments to Title VII and Section 1981

Prior to enactment of the Act, Title VII authorized a court to remedy a Title VII violation through an award of backpay "or any other equitable relief as the court deems appropriate." 42 U.S.C.A. § 2000e–5(g). Because both punitive and compensatory damages are viewed as legal relief, they were not available under Title VII prior to the Act. *See, e.g., Protos v. Volkswagen of America, Inc.,* 797 F.2d 129, 138 (3d Cir.), *cert. denied,* 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986); *Galeone v. American Packaging Corp.,* 764 F.Supp. 349, 350–51 (E.D.Pa.1991). The fact that Title VII did not afford legal relief before the Act also meant that parties did not have a right to a jury trial. *See, e.g., Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981); *Roebuck v. Drexel University,* 852 F.2d 715, 737 n. 40 (3d Cir.1988).

Sections 102(a)(1) and 102(c)(1) of the Act, which have been codified at 42 U.S.C.A. §§ 1981a(a)(1) and 1981a(c)(1) (West Supp.1992), not only authorize compensatory and punitive damages under Title VII, but a trial by jury as well. Section 102(a)(1) of the Act provides, in pertinent part, that

> [i]n an action brought by a complaining party under ... [Title VII] of the Civil Rights Act of 1964 ... against a respondent who engaged in unlawful intentional discrimination..., the complaining party may recover compensatory and punitive damages....

42 U.S.C.A. § 1981a(a)(1). Section 102(c)(1) of the Act states that "[i]f a complaining party seeks compensatory or punitive damages under this section ... any party may demand a trial by jury[.]" 42 U.S.C.A. § 1981a(c)(1).

Plaintiff Aiken also seeks to amend her complaint to include amendments the Act made which impact her Section 1981 claim. Section 1981 provides all persons in the jurisdiction of the United States with the same right "to make and enforce contracts ... as is enjoyed by white citizens...." 42 U.S.C.A. § 1981 (West 1981 & Supp.1992). In *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that racial harassment relating to the conditions of employment is not actionable under Section 1981. *Id.* at 171, 109 S.Ct. at 2369. The Court explained that Section 1981 does not apply to conduct occurring after the formation of a contract, such as an employment contract, and which does not interfere with the right to enforce established contract obligations. *Id.* The Court stated that such conduct is more naturally governed by state contract law and Title VII. *Id.* at 177, 109 S.Ct. at 2372–73. Although the *Patterson* Court did not specifically hold that a claim of racially motivated or constructive discharge was also not cognizable under Section 1981, lower courts, including the Court of Appeals for the Third Circuit, have held that the reasoning of *Patterson* precludes such a Section 1981 claim, because job termination, like on-the-job harassment, is conduct occurring after the formation of a contract. *See, e.g., Hayes v. Community General Osteopathic Hosp.,* 940 F.2d 54, 56 (3d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992).

courts comprising the Third Circuit. Most of these opinions have also determined that the Act should not be retroactively applied. *See Crumley v. Delaware State College,* 797 F.Supp. 341 (D.Del.1992) (Act not to be retroactively applied); *Tyler v. Commonwealth of Pa., Dep't of Revenue,* 793 F.Supp. 98 (M.D.Pa.1992) (Act applied retroactively); *Haynes v. The Glen Mills Schools,* No. 91–6905, 1992 WL 97904, 1992 U.S.Dist. LEXIS 6464 (E.D.Pa. May 6, 1992) (Act not to be applied retroactively); *Sample v. Keystone Carbon Co.,* 786 F.Supp. 527 (W.D.Pa. 1992) (Act applied retroactively); *Thompson v. Johnson & Johnson Management Info. Ctr.,* 783

F.Supp. 893 (D.N.J.1992) (Act not to be applied retroactively); *NAACP v. West Orange, N.J.,* 786 F.Supp. 408 (D.N.J.1992) (same in dictum); *Kimble v. DPCE, Inc.,* 784 F.Supp. 250 (E.D.Pa. 1992) (Act not to be applied retroactively); *Tyree v. Riley,* 783 F.Supp. 877 (D.N.J.1992) (same); *Futch v. Stone,* 782 F.Supp. 284 (M.D.Pa.1992) (same); *Sinnovich v. Port Auth. of Allegheny County,* No. 89–1524, 1991 WL 348046, 1991 U.S.Dist. LEXIS 20250 (W.D.Pa. Dec. 31, 1991) (same); *Thakkar v. Provident Nat'l Bank,* No. 90–3907, 1991 WL 274827, 1991 U.S.Dist. LEXIS 18753 (E.D.Pa. Dec. 17, 1991) (Act applied retroactively).

Section 101(2)(b) of the Act, codified at 42 U.S.C.A. § 1981(b) (West Supp.1992), legislatively overrules *Patterson* by amending Section 1981 to state as follows:

> For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

A stated purpose of the Act is "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes." Pub.L. No. 102–166, § 3(4), 105 Stat. 1071 (1991).

■ The determination of whether a statute should be applied retroactively " 'must begin with the language of the statute itself.' " *Bread Political Action Comm. v. Federal Election Comm'n*, 455 U.S. 577, 580, 102 S.Ct. 1235, 1237, 71 L.Ed.2d 432 (1982) (quoting *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 187, 100 S.Ct. 2601, 2608, 65 L.Ed.2d 696 (1980)). The language of a statute is considered controlling in this analysis unless there is a clear legislative intent to the contrary. *Id. See also Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 838, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (congressional intent controlling on the issue of prospective versus retroactive application when this intent clear).

### 2. The Language of the Act

The text of the Act is inconclusive on the question of whether this statute is to be applied retroactively. Section 402(a) states: "Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment." Pub.L. No. 102–166, § 402(a), 105 Stat. 1099. No guidance may be gleaned from this clause, as it is susceptible to several different interpretations:

> [i]t might mean that the ... Act applies to conduct which occurred after the enactment, it might mean that the Act applies to cases filed after the enactment, it might mean that the Act applies to all proceedings beginning after the enact-
ment, [or] it might mean that the Act's provisions apply to all pending cases at any stage of the proceedings.

*Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929, 932 (7th Cir. 1992); *Thompson v. Johnson & Johnson Management Info. Center*, 783 F.Supp. 893, 894 (D.N.J.1992) ("Section 402(a) neither supports nor refutes either side of the argument regarding the 1991 Act's retroactive application."); *Kimble v. DPCE, Inc.*, 784 F.Supp. 250, 251 (E.D.Pa.1992) (Act's language is inconclusive on issue of retroactivity).

Plaintiff argues that two other provisions in the Act, Section 109(c) and Section 402(b), support an application of the Act to pending cases. Section 109(c) provides that "[t]he amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act." Pub.L. No. 102–166, § 109(c), 105 Stat. 1078. Section 402(b) states:

> [n]otwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

Pub.L. No. 102–166, § 402(b), 105 Stat. 1099. Plaintiff believes that Sections 109(c) and 402(b) would be rendered meaningless or redundant if the remainder of the Act was not deemed applicable to pending cases. Plaintiff's Memorandum of Law in Support of Retroactive Application of the Civil Rights Act of 1991, to Amend Her Complaint in Count I, and to Reinstate Her Claims Under 42 U.S.C. 1981 in Count II ("Plaintiff's Memo.") at pp. 7–8.

■ Plaintiff overstates the significance of Sections 109(c) and 402(b). Section 402(b) has a very limited and specific purpose. It was drafted into the Act solely to ensure that the Act would not apply to the parties involved in the protracted case of *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), "a disparate impact case in litigation for approximately twenty-five years." *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929, 933 ("Section

402(b) is nothing more than a clear assurance that courts would not apply the 1991 Act to the *Wards Cove* litigation regardless of how the courts might eventually construe the 1991 Act's applicability to pending cases.") (citing statement of Senator Dole) (footnote omitted)). *See also Thompson,* 783 F.Supp. at 895 (Section 402(b) of the Act not clear expression of legislative intent regarding retroactivity of the statute; *Wards Cove* is the only case satisfying Section 402(b)'s prerequisites).

Section 109(c) also does not serve as a clear legislative beacon on the question of the Act's retroactivity. Section 109 was designed specifically to overrule legislatively the case of *EEOC v. Arabian Amer. Oil Co.,* —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), "by providing that Title VII applies to U.S. citizens employed in foreign countries." *Fray v. The Omaha World Herald Co.,* 960 F.2d 1370, 1376 (8th Cir.1992). Section 109(c) may be construed as simply an added assurance that this particular section's provisions will be applicable only to post-enactment conduct regardless of the manner in which courts eventually apply the other provisions of the Act. *Mozee,* 963 F.2d at 933. I am significantly more persuaded with this construction than with the inference Plaintiff Aiken has proposed, *viz.,* that the prospective command of Section 109(c) implies that other sections of the Act should be applied retroactively.

The language of other sections of the Act also militates against the inference of retroactivity plaintiff has proposed. Thus, Section 102(a) of the Act states that only a "complaining party" may seek compensatory and punitive damages and a jury trial. Pub.L. No. 102–166, § 102(a), 105 Stat. 1072. The term "complaining party" is

defined in Section 102(d) to mean "the Equal Employment Opportunity Commission, the Attorney General, or *a person who may bring an action or proceeding under title VII. . . ."* Pub.L. No. 102–166, § 102(d), 105 Stat. 1073 (emphasis added). This definition appears to state that only plaintiffs who have not yet brought their lawsuits are entitled to rely upon the Act. *Thompson,* 783 F.Supp. at 895 (citing *Van Meter v. Barr,* 778 F.Supp. 83, 85 (D.D.C. 1991)).

In sum, a reading of the language of the Act alone does not indicate whether this statute is to be applied to cases pending at the time of its enactment. Unfortunately, the contradictory and partisan legislative history behind the Act provides no better guidance.

### 3. Legislative History

There are no legislative committee reports arising from the bills that became the Act. *Fray v. The Omaha World Herald Co.,* 960 F.2d 1370, 1376 (8th Cir.1992). The issue of the retroactivity of the Act was extensively discussed in the congressional floor debates, however. *Id.* Senator Danforth, Republican from Missouri, and Senator Kennedy, Democrat from Massachusetts, the primary sponsors of the Act, agreed on every issue but retroactivity. *Thompson v. Johnson & Johnson Management Info. Center,* 783 F.Supp. 893, 896 (D.N.J.1992) (citing 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991)). Senator Danforth's Republican colleagues in the Senate agreed with his view that the Act would only be applied prospectively, and the Democratic senators supported the belief of Senator Kennedy that the Act would be applied retroactively. *Id.* (citing 137 Cong.Rec. S15,485 (Oct. 30, 1991)).[3]

---

**3.** In a statement issued upon signing the Act into law, President Bush endorsed a detailed analysis of the statute introduced by Senator Dole of Kansas, stating that this analysis would "be treated as authoritative interpretative guidance by all officials in the executive branch with respect to the law of disparate impact as well as the other matters covered in . . . [Senator Dole's analysis]." Daily Labor Report (No. 226) (BNA) at D–1 (Nov. 22, 1991), Defendant's Response to Plaintiff's Motion to Amend Complaint and Re-

instate Claims under 42 U.S.C. § 1981 and for Retroactive Application of the Civil Rights Act of 1991 ("Defendant's Response"), Exhibit D. The analysis introduced by Senator Dole held that the Act was not to be applied retroactively. *Sinnovich v. Port Authority of Allegheny County,* No. 89–1524, 1991 WL 348046, at *1 1991 U.S.Dist. LEXIS 20250, at *2 (W.D.Pa. Dec. 31, 1991) (citing 137 Cong.Rec. S15,472–15,478 (daily ed. Oct. 30, 1991)).

The beliefs of the members of the House of Representatives on the issue of retroactivity were also divided along party lines. *Id.* (citing 137 Cong.Rec. H9,530 (daily ed. Nov. 7, 1991)). In sum, "[a] clear indication of congressional intent cannot be deciphered from the [Act's] legislative history...." *Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929, 934 (7th Cir.1992). *See also Long v. Hershey Chocolate, U.S.A.*, No. 1:CV–91–1689, 1992 WL 191097, at *3, 1992 U.S.Dist. LEXIS 6583, at *8 (M.D.Pa. May 1, 1992) (legislative history of the Act is both partisan and indeterminate); *Thompson*, 783 F.Supp. at 896 ("[T]he legislative history of the 1991 Act only clouds the issue[, retroactivity,] before the court."); *Kimble v. DPCE, Inc.*, 784 F.Supp. 250, 251 (E.D.Pa.1992) ("Given ... [the conflicting declarations from members of Congress on the issue of retroactivity], I find that the congressional intent is not clear."). I am, therefore, relegated to judicially fashioned rules of construction and other extrinsic evidence in order to resolve the ambiguity of the statute on the question of its retroactivity.

### 4. Case Law on Retroactivity
#### a) The Supreme Court

The ambiguity of the Act and its legislative history on the topic of retroactivity does not find a simple resolution in case law. *See generally Mozee v. American Commercial Marine Service Co.*, 963 F.2d 929, 931–938 (7th Cir.1992) (discussing the conflicting Supreme Court precedent in area of retroactivity). In *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969), the Supreme Court departed from its previously followed general presumption that statutes are to be applied prospectively only unless the statute expressly pro-

vides otherwise. The Court in *Thorpe* stated that the presumption runs the other way. *Thorpe*, 393 U.S. at 281, 89 S.Ct. at 525. The Court did not discuss its departure from a long line of precedent abiding by the prospective presumption. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 845, 110 S.Ct. 1570, 1581, 108 L.Ed.2d 842 (1990) (Scalia, J. concurring).

The Supreme Court reaffirmed *Thorpe* in *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), stating that the general rule requires the application of new statutory provisions at the time of a court's decision absent manifest injustice or statutory or legislative direction to the contrary. *Id.* at 711, 94 S.Ct. at 2016. Decisions of the Court following *Bradley* on the issue of retroactivity have not travelled a consistent path. In *United States v. Security Indus. Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), the Court stated that "[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *Id.* at 79, 103 S.Ct. at 413.[4] Subsequently, in *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), the Supreme Court applied the *Thorpe–Bradley* presumption of retroactivity, but held that the particular facts at bar were excluded from this presumption. *Id.* at 638–40, 105 S.Ct. at 1559–61.

In 1988, the Court changed its course. In *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Supreme Court reverted to the general rule that courts should generally assume that statutes are to be applied prospectively. The Court, in a unanimous decision, stated: "Retroactivi-

---

**4.** The rationale for the general principle that judicial decisions, as opposed to new statutes, are to be applied retrospectively has recently been succinctly explained by Judge Posner of the Seventh Circuit:

[The principle that judicial decisions operate retrospectively] rest[s] not on the fiction that judges find rather than make law but on such practical reasons as that otherwise litigants might lack adequate incentives to seek legal change through the courts and courts might

feel too free to make such changes, because the costs in disturbance of expectations would be minimized by prospective application. Moreover, the power of a court to redistribute wealth and otherwise disturb settled expectations is held in check by the judicial tradition of incremental change and by the limited control that judges exercise over taxing and spending.

*Luddington v. Indiana Bell Tel. Co.*, 966 F.2d 225, 228 (7th Cir.1992).

ty is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471. A year later, the Court mentioned *Thorpe* in passing, because it provided authority for the concession of the parties that certain recently passed regulations applied to the case. *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 661 n. 1, 109 S.Ct. 1384, 1388 n. 1, 103 L.Ed.2d 685 (1989).

The Court acknowledged the murkiness of its jurisprudence in this area in *Kaiser.* There, the Court in its majority opinion recognized that there was an "apparent tension" between the *Thorpe–Bradley* line of cases and the cases following *Bowen. Kaiser*, 494 U.S. at 837, 110 S.Ct. at 1576–77. The majority in *Kaiser* did not attempt to reconcile this tension, however, as it found that the statute at issue expressed a clear intent not to be applied retroactively. *Id.* at 837–38, 110 S.Ct. at 1576–77.

In a concurring opinion in *Kaiser*, Justice Scalia asserted that the Court should reconcile the divergent lines of precedent by overruling the *Thorpe–Bradley* line. *Id.* at 841, 110 S.Ct. at 1579. Justice Scalia reasoned that the *Bowen* presumption of prospective application is a doctrine supported by history and tradition. *Id.* at 855, 110 S.Ct. at 1586. He explained that the presumption of prospective application stems from the notion that parties should only be held accountable for the laws in existence at the time of their conduct. *Id.* Courts addressing the question of the retroactivity of the Act have found the opinion of Justice Scalia in *Kaiser* compelling. *See, e.g., Kimble v. DPCE, Inc.*, 784 F.Supp. 250, 252 n. 2 (E.D.Pa.1992); *Futch v. Stone*, 782 F.Supp. 284, 286 n. 1 (M.D.Pa.1992).

#### b) The Court of Appeals for the Third Circuit

The Court of Appeals for the Third Circuit has not clearly adopted one of the two lines of Supreme Court retroactivity cases. *See generally Tyree v. Riley*, 783 F.Supp. 877, 883–84 (D.N.J.1992) (reviewing Third Circuit retroactivity case law). In *Davis v. Omitowoju*, 883 F.2d 1155 (3d Cir.1989), the court of appeals, following the Supreme Court decision of *United States v. Security Indus. Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), held that the district court had not erred in denying retroactive application of an amended statute setting a cap on damages in medical malpractice verdicts. *Davis*, 883 F.2d at 1170–71. Commenting on the general prospective presumption relied upon in *Security Indus. Bank*, the *Davis* court stated that "this rule 'has generally been applied only when application of the new law would affect rights or obligations existing prior to the change in law.'" *Id.* at 1170 (quoting *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 865 F.2d 566 (3d Cir.1989), *rev'd in part and aff'd in part*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)).

In *United States v. Jacobs*, 919 F.2d 10 (3d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1333, 113 L.Ed.2d 265 (1991), the Third Circuit followed the *Thorpe–Bradley* line of cases. In *Jacobs*, at the time the defendant committed her offense, it was classified as a Class B felony. *Id.* at 11. However, at the time of her sentencing, the offense was classified as a Class C felony as a result of an amendment to 18 U.S.C. § 3359(a). The district court determined that her offense was a Class C felony and sentenced her accordingly. Consequently, the defendant was not eligible for probation. *Id.* The court cited the *Thorpe–Bradley* rule regarding retroactivity, but actually relied upon the so-called general saving statute, 1 U.S.C. § 9, to apply the classification amendment retroactively. *Id.* at 11–12.

Further, in *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914 (3d Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990), the Third Circuit, citing the *Thorpe–Bradley* presumption, retroactively applied an amendment to the Lanham Act after finding no threat of manifest injustice from such an application. *Id.* at 922 n. 9 (citation omitted). In addition, in *Air–Shields, Inc. v. Fullam*, 891 F.2d 63 (3d Cir.1989), the court retroactively applied amendments

in the federal removal statute. *Id.* at 65. The Third Circuit relied upon the *Thorpe–Bradley* line of cases, but did not discuss the reason for this reliance, or the extent to which a manifest injustice would or would not result from a retroactive application of the new statute.

Although the Third Circuit has relied upon the *Thorpe–Bradley* general presumption of retroactivity, it made clear in the *Davis* opinion that a new statute is not to be applied retroactively if "application of the new law would effect rights and obligations existing prior to the change in law." This rule is in harmony with the manifest injustice exception to the *Thorpe–Bradley* presumption, because if a new statute affects the rights and obligations of a party, a manifest injustice would likely result from the retroactive application of the new law. *Tyree,* 783 F.Supp. at 884. At least two recent decisions from district courts within the Third Circuit have determined that the *Davis* rule requires a conclusion that amendments made by the Act should not be applied retroactively. *See Thompson v. Johnson & Johnson Management Info. Center,* 783 F.Supp. 893, 897 (D.N.J.1992) ("[T]he Third Circuit's opinion in *Davis* leads this court to find against retroactive application."); *Kimble v. DPCE, Inc.,* 784 F.Supp. 250, 252 (E.D.Pa. 1992) ("I believe *Davis* mandates that the presumption in favor of prospectivity applies to the present case.").

I also find that the admonition of *Davis,* holding that a new statute should not be applied retroactively if such an application would impact pre-enactment rights and obligations, precludes a retroactive application of Sections 101 and 102 of the Act. The *Davis* rule finds its root in the venerable legal doctrine known as the "rule of law." As explained by Judge Posner,

> [t]he idea that the law should coniine [sic] its prohibitions and regulations to future conduct, so that the persons subject to the law can conform their conduct to it and thus avoid being punished, whether criminally or civilly, for conduct that they had no reason to think unlawful, is a component of the traditional concept of the 'rule of law.' Except as

codified in constitutional provisions (retroactive imposition of criminal penalties, for example, is forbidden by the *ex post facto* clause of the Constitution), the traditional conception is neither immutable nor absolute. But we think that conformity to it is the right policy for courts to follow in default of other guidance.

*Luddington v. Indiana Bell Tel. Co.,* 966 F.2d 225, 227–228 (7th Cir.1992) (reaffirming May 1992 *Mozee* decision of the Seventh Circuit concluding that Act is not to be applied retroactively). Section 101 of the Act amends Section 1981 by legislatively overruling *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). As discussed above, under *Patterson* and its progeny, allegedly discriminatory conduct which occurred after the formation of an employment contract and which did not interfere with the right to enforce established contractual obligations did not violate Section 1981. For instance, during the *Patterson* era, claims of racially motivated or constructive discharge were not cognizable under Section 1981, because job termination, like on-the-job harassment, is conduct occurring after the formation of an employment contract. *See, e.g., Hayes v. Community General Osteopathic Hosp.,* 940 F.2d 54, 56 (3d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992). Section 101 of the Act, 42 U.S.C.A. § 1981(b), brings such post-contract formation conduct within the ambit of Section 1981, and thus affects the rights and obligations of the parties as they existed during the reign of *Patterson.*

Section 102 of the Act, 42 U.S.C.A. § 1981a, also affects the pre-enactment rights and obligations of the parties. As noted above, Section 102 greatly expands the legal relief available under the Act by authorizing courts to award compensatory and punitive damages and a trial by jury. Prior to the Act, relief for a violation of Title VII was limited to an award of backpay and other equitable relief that a court deemed appropriate. *See, e.g., Protos v. Volkswagen of America, Inc.,* 797 F.2d 129, 138 (3d Cir.), *cert. denied,* 479 U.S.

972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986); *Galeone v. American Packaging Corp.*, 764 F.Supp. 349, 350–51 (E.D.Pa.1991). Although the right to a jury trial now afforded by Section 102 may arguably constitute a non-prejudicial change in the pre-enactment law of Title VII, the same cannot be said of this provision's authorization of compensatory and punitive damages.[5] As explained in *Luddington*, changes in available remedies can have a tremendous impact on conduct outside the courtroom. *Luddington*, 966 F.2d 225, 229. The degree of caution and diligence that individuals and firms undertake to avoid being subject to either civil or criminal liability is largely attributable to the severity of the sanction authorized. *Id.* When the sanction or available remedies are increased, individuals and entities are entitled to a chance to adjust their level of care in view of the new environment created by the change. *Id.*

Other courts addressing the retroactivity of Section 102 have also found that the amendments made by this section impact the prior rights and obligations of the parties. *See, e.g., Crumley v. Delaware State College*, 797 F.Supp. 341, 349 (D.Del.1992) (retroactive application of new damage provisions of Act does not create new cause of action, but does potentially subject a defendant to substantially more in damages; consequently, new damages authorized by Section 102 are substantive rather than procedural in nature) (citing *Thomas v. Frank*, 791 F.Supp. 470, 476–77 (D.N.J. 1992)); *Long v. Hershey Chocolate, U.S.A.*, No. 1:CV–91–1689, 1992 WL 191097, at *4, 1992 U.S.Dist. LEXIS 6583, at *14–*15 (M.D.Pa.1992) (Section 102 constitutes a " 'major substantive provision. With these new sanctions necessarily comes the requirement that courts consider different and dispositive issues.' ") (quoting *Tyree v. Riley*, 783 F.Supp. 877, 890–91 (D.N.J. 1992)).

Accordingly, I conclude that an application of the Third Circuit's *Davis* opinion prevents a retroactive application of Sections 101 and 102 of the Act.[6]

### 5. The EEOC Policy Statement Regarding the Act

On December 27, 1991, the Equal Employment Opportunity Commission ("EEOC") issued a policy statement addressing the issue of whether the compensatory and punitive damages provisions of Section 102 of the Act should be applied to claims based upon pre-enactment conduct. *See* Defendant's Response, Exhibit E, at 1. After concluding that the language and legislative history of the Act was inconclusive, *id.* at 3–4, the EEOC examined case

---

5. The right to a jury trial has been held to be procedural in nature. *See Crumley v. Delaware State College*, 797 F.Supp. at 350 (D.Del.1992) (citing *Wabol v. Villacrusis*, 958 F.2d 1450, 1460 (9th Cir.1990)). Nevertheless, I cannot allow plaintiff Aiken to demand a jury trial in connection with her Title VII claim, as I shall conclude based on the analysis which follows that Section 102's authorization of compensatory and punitive damages may not be applied retroactively. This effectively leaves plaintiff Aiken with the pre-enactment relief available under Title VII, which is only equitable in nature and, therefore, does not afford the right to a trial by jury. *See, e.g., Lehman v. Nakshian*, 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981); *Roebuck v. Drexel University*, 852 F.2d 715, 737 n. 40 (3d Cir.1988). *See also Crumley*, 797 F.Supp. 350 (" 'The Civil Rights Act of 1991 not only provides for compensatory and punitive damages for Title VII claimants but specifically and logically confines the right to a jury trial to parties seeking such damages.' ") (quoting *Davis*

v. *Therm–O–Disc, Inc.*, 791 F.Supp. 693, 700 (N.D.Ohio 1992)).

6. Plaintiff Aiken contends that the general presumption followed in *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), favoring the retroactive application of new statutory provisions absent manifest injustice or congressional direction to the contrary, supports the retroactive application of Sections 101 and 102. Plaintiff's Memo. at 11. I need not address this assertion, because I have already found that the Act should not be applied retroactively under the analysis set forth above. I find, however, as have other courts, that a retroactive application of Sections 101 and 102 would trigger the manifest injustice exception to the *Bradley* presumption. *See, e.g., Crumley*, 797 F.Supp. 349–350; *Long*, 1992 WL 191097, at *3–*4, 1992 U.S.Dist. LEXIS 6583, at *15–*16; *McCullough v. Consolidated Rail Corp.*, 785 F.Supp. 1309, 1314–16 (N.D.Ill.1992); *Kimble v. DPCE, Inc.*, 784 F.Supp. 250, 252–53 (E.D.Pa.1992); *Tyree*, 783 F.Supp. at 892.

law. The agency reviewed the two lines of conflicting Supreme Court cases on the topic of the retroactivity of new statutes and determined that the general presumption of prospective application followed in *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), was the better view, as it represented the Supreme Court's more recent holding on the subject. Defendant's Response, Exhibit E, EEOC Policy Statement at 7. As a result, the EEOC concluded that it would "not seek damages in charges filed prior to enactment of the Act, or in post-Act charges that challenge pre-Act conduct." Several courts have cited the EEOC report as authority supporting a finding that the Act is to be applied prospectively only. *See Vogel v. The City of Cincinnati*, 959 F.2d 594, 598 (6th Cir.1992); *Tyree v. Riley*, 783 F.Supp. 877, 888–89 (D.N.J.1992). These cases have essentially relied upon the deference traditionally shown to administrative agencies in their interpretation of statutes and rules which they administer. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), *reh'g denied*, 468 U.S. 1227, 105 S.Ct. 28, 29, 82 L.Ed.2d 921 (1984) ("[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer. . . .").

Although I take comfort in the result the EEOC reached in its December 27, 1991 policy statement, I respectfully disagree with the opinions which have accorded this statement great weight in deciding that the Act should not be retroactively applied. The Supreme Court specifically addressed the degree of deference which should be afforded guidelines issued by the EEOC in *E.E.O.C. v. Arabian Amer. Oil Co.*, —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). There, the Court stated:

In *General Electric Co. v. Gilbert*, 429 U.S. 125, 140–146, 97 S.Ct. 401, 410–413, 50 L.Ed.2d 343 (1976), we addressed the proper deference to be afforded the EEOC's guidelines. Recognizing that 'Congress, in enacting Title VII, did not confer upon the EEOC authority to promulgate rules or regulations,' we held that the level of deference afforded " 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.' " *Id.*, at 141, 142, 97 S.Ct., at 410, 411 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)).

*Id.* —— U.S. at ——, 111 S.Ct. at 1235.[7] In determining that Section 102 of the Act should not be applied retroactively, the EEOC simply employed standard tools of statutory construction, such as an examination of the language of the statute and pertinent case law. In this regard, the EEOC has no greater knowledge or experience than the federal courts.

Accordingly, I do not grant the December 27, 1991 EEOC policy statement the usual deference shown administrative agencies in the areas of their expertise. I am not alone in this determination. *See, e.g., Crumley*, 797 F.Supp. 341, 347 ("Because the EEOC's expertise does not encompass analysis of Supreme Court cases, this Court will not rest its holding on deference to the EEOC's Policy Statement."); *Smith v. Petra Cablevision Corp.*, 793 F.Supp. 417, 425 (E.D.N.Y.1992) ("[T]he EEOC's policy statement was not based on any particular expertise it possesses but rather upon an analysis of how the Commission expected the courts to resolve the conflict between *Bradley* and *Bowen*."). *See also Ayala–Chavez v. U.S. I.N.S.*, 945 F.2d 288, 294 (9th Cir.1991) (" '[T]raditional

---

7. The Court in *Arabian American Oil Co.* held that Title VII does not apply extraterritorially to regulate the employment practices of United States employers who employ United States citizens abroad. *Arabian Amer. Oil Co.*, —— U.S. at ——, 111 S.Ct. at 1229. As noted above, this holding was legislatively overruled by Section 109 of the Act. *See Fray v. The Omaha World Herald Co.*, 960 F.2d 1370, 1376 (8th Cir.1992). However, the "Supreme Court's discussion of the appropriate deference to be afforded to EEOC guidelines remains valid." *Crumley v. Delaware State College*, 797 F.Supp. 341, 347 n. 7 (D.Del.1992).

**534**

tools of statutory construction' are within the special expertise of courts, not agencies...."') (citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)). As discussed above, however, I have concluded that Sections 101 and 102 of the Act should not be applied retroactively based on my analysis of case law on retroactivity.

CONCLUSION

For the foregoing reasons, the motions of Plaintiff Aiken for entry of final judgment and to amend Count I and Count II of her complaint shall be denied.

An appropriate Order follows.