**CITY OF HARRISBURG**, National Weather Service Employees Organization Branches 1–36, 1–56, 1–14, Plaintiffs,

v.

**Barbara H. FRANKLIN, Secretary U.S. Department of Commerce, Defendant.**

Civ. A. No. 1:CV–92–572.

United States District Court, M.D. Pennsylvania.

Nov. 13, 1992.

Jill A. Devine, Harrisburg, Pa., Richard J. Hirn, National Weather Service Employees Organization Office of Gen. Counsel, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Sandra M. Schraibman, Pamela J. Eppli, Department of Justice, Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

We are considering the parties' motions for reconsideration of our Memorandum and Order of September 22, 1992, in which we granted summary judgment to defendant.[1]

We believe additional briefing and the recent enactment of the Weather Service Modernization Act of 1992, Pub.L. No. 102–567 (to be codified at 15 U.S.C. § 313 note), ("1992 Act") warrant a reexamination of our earlier decision.[2]

## I. FACTS

The National Weather Service ("NWS"), an agency within the Commerce Department, is in the process of modernizing its facilities according to a ten-year plan pre-pared at the behest of Congress. Much of the equipment used in NWS offices is more than a quarter of a century old. In directing the Secretary of Commerce to develop a modernization plan, Congress provided a certification procedure to ensure that no substantive change would occur in certain NWS offices without the NWS certifying to Congress that the change would not degrade weather forecast service. This provision is at the heart of the present controversy.

> (b) CERTIFICATION.—The Secretary shall not close, consolidate, automate, or relocate any field office, unless the Secretary has certified that such action will not result in any degradation of service.

1992 Act at § 706. The definitional section of the new law notes that " 'field office' means any National Weather Service Office or National Weather Service Forecast Office," § 702(5), and that " 'relocate' means to transfer from one location to another location that is outside the local commuting or service area," § 702(7).

This action involves NWS plans regarding three field offices in Pennsylvania, the Harrisburg Weather Service Office, the Middle Atlantic River Forecast Center (in Harrisburg), and the Philadelphia Weather Service Forecast Office. The NWS plans to move the two Harrisburg offices to State College, Pennsylvania, and the Philadelphia office to Mount Holly, New Jersey.[3] The plaintiffs, the City of Harrisburg and the National Weather Service Employees Organization, complain that the NWS intends to make those moves in violation of the certification requirement.[4]

---

1. We should note that defendant's motion for reconsideration is improvidently made. Defendant, in essence, has asked us to reconsider an order in which we granted summary judgment in her favor. Certainly, she does not seek a change in that order. We must presume that she seeks only a change in the underlying rationale. Such a motion is unnecessary. However, because the issues defendant seeks to have reviewed are the same as those raised by plaintiffs' motion, we will address them even though we must dismiss defendant's motion.

2. Our Memorandum and Order were filed September 22, 1992. On October 7, 1992, the United States Senate passed the House version of the new legislation. The bill was presented to the president on October 20, 1992, and he signed it nine days later.

3. The River Forecast Center would move in January, 1993, the Harrisburg Weather Service Office in April, 1994, and the Philadelphia Weather Service Office in July, 1993.

4. At the time plaintiffs filed their action, the applicable legislation was the NOAA Authorization Act of 1989, Public Law 100–685, 15 U.S.C. § 313 note (1989). With the enactment of the 1992 Act, our focus shifts. Because the request sought is injunctive, and the challenged actions are prospective, we must apply the new law.

We previously held that the agency has discretion in determining *how* to comply with the certification requirement. No. 92–572 (M.D.Pa. September 22, 1992) (Caldwell, J.). In that opinion, we also held that the certification requirement applies to actions involving River Forecast Centers as well as National Weather Service Offices and National Weather Service Forecast Offices. Because we granted the motion for summary judgment on other grounds, we did not address defendant's contention that the move of the Philadelphia office is not the sort of "relocation" contemplated by the statute.

## II. LAW AND DISCUSSION

The present motions require us to determine in what circumstances defendant must comply with the certification requirement. Defendant again argues that the certification requirement does not include River Forecast Centers. In their motion, plaintiffs argue that we should reconsider our decision because defendant has already indicated her intention not to certify the moves of the Middle Atlantic River Forecast Center and the Philadelphia Weather Service Forecast Office because she believes the certification requirement to be inapplicable to those moves.

Resolution of these pending motions requires us to address two issues: (1) whether the certification requirement applies to River Forecast Centers and (2) whether the certification requirement applies to the sort of move defendant proposes for the Philadelphia office. We will address them *seriatim.*

### A. *River Forecast Centers*

In our earlier Memorandum and Order, we held that the legislative history and the language of the statute did not demonstrate that Congress meant to exclude River Forecast Centers from the certification requirement. Reference to the 1992 Act and various NWS publications leads us to a different conclusion.

*Cf. Aiken v. Bucks Association for Retarded Citizens, Inc.,* 799 F.Supp. 522 (E.D.Pa. July 14,

■ It is well-settled that the starting point for interpreting a statute is the plain language of the statute itself. *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The plain language of the 1992 Act leaves little question about congressional intent. The certification requirement specifically applies to "field offices." "Field office" is defined in the statute as "any National Weather Service Office or National Weather Service Forecast Office." There are, however, four additional types of National Weather Service field offices established by the NWS, among which are the National Hurricane Center, the National Severe Storms Forecast Center, the Weather Service Meteorological Observatories, and River Forecast Centers. Operations of the National Weather Service at 3 (1985). We must assume that Congress knew of the different sorts of field offices when it enacted the statute, having known to specify two of them by their proper names National Weather Service Offices and National Weather Service Forecast Offices. We interpret the provision in accordance with a well-established rule of statutory construction that the naming of one thing excludes the others. *Cipollone v. Liggett Group, Inc. et al.,* — U.S. —, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Conoco, Inc. et al v. Skinner,* 970 F.2d 1206 (3d Cir.1992). It is clear that Congress meant to exclude River Forecast Centers from the certification requirement, given that it expressly named two other types of offices.

Plaintiffs assert that the legislative history indicates a different intent. They point to a statement made in the congressional record by Rep. James Scheuer two weeks after our earlier Memorandum and Order.

> Two weeks ago, a Federal court in Pennsylvania ruled that the NWS' river forecast centers were forecast offices to which the certification requirements applied. No change in the scope of the law

1992).

is intended. There is no reason to exclude the river forecast centers from the certification or notification requirements. 138 Cong.Rec. E3301 (daily ed. Oct. 29, 1992) (statement of Rep. Scheuer). We recognize that Rep. Scheuer is the chairman of the House Science, Space and Technology Committee and that "[a]lthough statements of one legislator made during debate may not be controlling, [those of the bill's sponsor] are an authoritative guide to the statute's construction." *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 526–27, 102 S.Ct. 1912, 1920–21, 72 L.Ed.2d 299 (1982). Further, when Congress enacts a statute modifying a previous law, it is presumed to do so with knowledge of how courts have interpreted the previous law. *Regents of the University of California v. Eli Lilly and Co.*, 734 F.Supp. 911, 913 (N.D.Cal. 1990). Plaintiffs argue that, because it was aware of our construction of the statute, Congress would have re-written the portion of the statute dealing with River Forecast Centers had the legislature disagreed with our earlier interpretation. In the ordinary circumstance, we would agree.

■ For several reasons, we believe this analysis is inappropriate *in the instant case.* First, there is a hierarchy in statutory interpretation that requires us to look first to the plain language of the statute, and then to the legislative history only if the plain language is ambiguous. *AMP Inc. v. United States*, 820 F.2d 612, 615 (3d Cir.1987). Here, as we have described, the plain language is clear and in no need of clarification by reference to legislative history.

■ Second, Rep. Scheuer's statement was made *after* both Houses had passed the new law, and the statement was entered into the Congressional Record in the section entitled "Extensions of Remarks." [5] Statements in this section are written statements given to the clerk of the House for inclusion in the Record, and *they are never actually spoken on the floor of the legislature.* [6] Therefore, Rep. Scheuer's comments clearly do not indicate the legislative intent. We find additional support for this assertion in *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981) (Stewart, J., dissenting).

But the postenactment pronouncements of individual legislators purporting to construe an earlier statute have little, if any, weight in the judicial construction of the statute ... There are other reasons why Senator Garn's statement merits little weight. First, the statement was written and inserted in the Congressional Record, rather than made on the floor of the Senate.

*Id.* at 232, text and n. 10, 101 S.Ct. at 2280, text and n. 10. *See also,* N. David Bleisch, *The Congressional Record and the First Amendment: Accuracy is the Best Policy,* 12 B.C. Envtl.Aff.L.Rev. 341 (1985) (describing ease with which legislators can insert statements into the Record that were never spoken on the floor).

Third, while Congress is ordinarily presumed to act with knowledge of judicial interpretation, we do not believe that presumption applies with full vigor in a case in which the court's opinion is rendered and the Congress votes within 15 days. Recalling that Rep. Scheuer's comments came after the House and Senate votes, we find no reference in the Record that would lead us to believe that members of Congress were aware of our holding.

While our conclusion that the certification requirement does not apply to River Forecast Centers does not affect our earlier Memorandum and Order, we believe it offers useful guidance to the parties.

**B.** *The Philadelphia Weather Service Forecast Office*

Plaintiffs argue that defendant will exclude the Philadelphia Weather Service

---

**5.** The House passed the law on October 5, 1992, and the Senate on October 7, 1992. Rep. Scheuer's statement in the Congressional Record was made on October 9, 1992.

**6.** At the beginning of the section entitled "Extension of Remarks," there is a note indicating that statements in sans serif type are "inserted or appended, rather than spoken, by a Member of the House, on the floor." 138 Cong.Rec. E3299 (daily ed. Oct. 29, 1992). Rep. Scheuer's remarks are in san serif type, indicating that they were never uttered on the floor of the House.

Forecast Office move from certification because she asserts that the anticipated move is not a "relocation" as anticipated by the statute.

█ In reviewing agency action, we adhere to the standard the Supreme Court set forth in *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 703 (1984). If Congress has specifically addressed the issue, the agency must comply with the express mandate. If Congress has not addressed the issue, the agency must only offer a permissible construction of the statute. *Id.; See also, National Railroad Passenger Corp. v. Boston and Maine Corp.,* —— U.S. ——, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992); *Conoco, Inc., supra.* A permissible construction is one that involves a reasonable interpretation of the congressional mandate. *Id.*

█ Congress expressly defined "relocate" within the statute as "to transfer from one location to another location that is outside the local commuting or service area." § 702(7). "Service area" is defined as "the geographic area for which a field office provides services or conducts observations ..." § 702(9). There is no definition offered for what constitutes a "local commuting area."

Defendant argues that Mount Holly is only 20 miles from the current site of the Philadelphia office and is, therefore, within the local commuting area. We believe this to be a reasonable interpretation of that statutory phrase.

The parties offer conflicting portions of the legislative history in their attempts to define "local commuting area." [7] None of the references is conclusive and, under *Chevron,* we must defer to a reasonable agency interpretation.

Additionally, the statute refers to "local commuting or service area." Defendant has explained, and our reference to NWS manuals confirms, that Philadelphia and Mount Holly are within the *same* service area. Second Declaration of Elbert Friday, NWS Director, at ¶ 25; Operations of the National Weather Service at 11 (1985). We find defendant's interpretation of the statute to be reasonable and we will, accordingly, give it due deference.

## III. CONCLUSION

Both the statutory language and the reasonable interpretation given it by defendant lead us inexorably to the conclusion that the certification requirement does not apply to either the Middle Atlantic River Forecast Center or the Philadelphia Weather Service Forecast Office. We must, therefore, deny plaintiffs' motion for reconsideration. We have already noted that defendant's motion must be dismissed as it was improvidently made.

We recognize that this is a matter of importance to the litigants and to many members of the public. We conclude by emphasizing that the issues at hand are matters of legislative and administrative policy and that the proper role of this Court is to interpret and give effect to the will of Congress, not to pass on its wisdom.

## ORDER

AND NOW, this 13th day of November, 1992, upon consideration of the parties' motions for reconsideration, it is ordered that:

1. Defendant's second motion for an extension of time is denied as moot.

2. Defendant's motion for reconsideration is dismissed.

3. Plaintiffs' motion for reconsideration is denied.

---

**7.** Plaintiff offers the October 9, 1992, remarks of Rep. Scheuer in the Congressional Record in which the congressman offered a definition favorable to plaintiffs. For the reasons discussed earlier in this Memorandum, we do not believe Rep. Scheuer's statement can be appropriately viewed as an indication of legislative intent.