Blondell PARSONS, Plaintiff,

v.

CITY OF PHILADELPHIA COORDINATING OFFICE OF DRUG AND ALCOHOL ABUSE PROGRAMS, Defendant.

No. 92–CV–815.

United States District Court, E.D. Pennsylvania.

Oct. 7, 1993.

Alan B. Epstein, Jablon, Epstein and Wolf, Robert T. Vance, Jr., Brown, Vance, Jackson & Smith, Philadelphia, PA, for plaintiff.

Diane C. Howell, E. Jane Hix, Office of the City Sol., Philadelphia, PA, for defendant.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the motion for summary judgment of defendant, City of Philadelphia Coordinating Office of Drug and Alcohol Abuse Programs ("Codaap"), brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. This case revolves around the allegations of plaintiff, Ms. Blondell Parsons, who was employed by defendant as a DUI Case Manager before she resigned on July 20, 1992. Plaintiff, a black woman, filed a five count complaint with this Court on February 7, 1992, alleging that she had been discriminated against on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(3); the Civil Rights Act of 1991, 42 U.S.C. § 1981; and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"). She also alleged violations of state law for wrongful discharge with specific intent to harm, and intentional infliction of emotional distress. We previously granted partial summary judgment with respect to plaintiff's claim that defendant discriminated against her in violation of Title VII by failing to promote her to the position of Director of the Philadelphia Alcohol Safety Program/NEXUS ("AHSP/NEXUS").[1] *See Parsons v. City of Philadelphia Coordinating Office of Drug and Abuse Programs,* 822 F.Supp. 1181 (E.D.Pa.1993).

---

1. Plaintiff still has another Title VII allegation pending before this Court, however. She also alleges that she was discriminated against because she was not paid for the "out of class" work (meaning additional work which is not part of one's job description or duties, but is the work of an employee in a higher class under the City's Classification Plan) which she performed, whereas a white secretary who was also performing "out of class" work was compensated.

Defendant alleges the following in its summary judgment motion. First, this Court lacks jurisdiction over plaintiff's claim under the PHRA. Second, plaintiff has failed to state a claim under 42 U.S.C. § 1981. Third, plaintiff is precluded by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §§ 8541–8564 (Purdon's 1982 and Supp.1991) ("TCA"), from bringing a claim against defendant for emotional distress. Alternatively, defendant argues that plaintiff has not adequately alleged facts to support a claim for emotional distress, if defendant does not have immunity under the TCA. Fourth, defendant alleges that it is also immune under the TCA from plaintiff's wrongful discharge claim. Finally, defendant alleges that plaintiff has failed to state a cause of action for which relief could be granted under the Title VII claims.

We have previously discussed the facts giving rise to this lawsuit, *see Parsons v. City of Philadelphia Coordinating Office of Drug and Abuse Programs,* 822 F.Supp. 1181 (E.D.Pa.1993), and as such, will only discuss any additional facts as are necessary to determine each issue.

*Standard*

■ In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court is required to determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2512. While the movant bears the initial burden of demonstrating an absence of genuine issues of material fact, the nonmovant must then establish the existence of each element of its case. *J.F. Feeser, Inc., v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3rd Cir.1990), *cert.*

*denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

*Discussion*

**I. Lack of jurisdiction over plaintiff's PHRA claims**

Defendant argues that this Court does not have jurisdiction over plaintiff's claims which arise under the PHRA, because she has not filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), and therefore she has failed to exhaust her administrative remedies.

■ Under the PHRA, a person must file a complaint (or charge) of discrimination with the PHRC within 180 days after the alleged discriminatory act occurred. 43 P.S. § 959(a), (h) (Supp.1993). A person has a right to resort to judicial remedies if "within one (1) year after the filing of a complaint with the [PHRC], the [PHRC] dismisses the complaint or has not entered into a conciliation agreement...." 43 P.S. § 962(c)(1) (Supp.1993). Failure to exhaust one's remedies under the PHRA precludes a court from exercising jurisdiction over the party's claim under the PHRA in subsequent litigation. *Clay v. Advanced Computer Applications,* 522 Pa. 86, 559 A.2d 917 (1989); *Schweitzer v. Rockwell Int'l,* 402 Pa.Super. 34, 586 A.2d 383 (1990), *allocatur denied,* 529 Pa. 635, 600 A.2d 954 (1991).

■ While a person must usually file an initial complaint with the PHRC, there are circumstances where a complaint initially filed with the Equal Employment Opportunity Commission ("E.E.O.C.") will suffice for purposes of satisfying the requirements of the PHRA. Under these circumstances, when the E.E.O.C. transmits the complaint to the PHRC for further processing, then the person has complied with the PHRA and needs not file a complaint with the PHRC. *Vincent v. Fuller Co.,* 532 Pa. 547, 616 A.2d 969, 971 (1992); *Lukus v. Westinghouse Elec. Corp.,* 276 Pa.Super. 232, 272, 419 A.2d 431, 452 (1980). It is the E.E.O.C.'s transmittal of the charge that constitutes filing under the

PHRA. *Lukus,* 276 Pa.Super. 232, 272, 419 A.2d 431, 451 (1980).

■ In the present case, plaintiff initially filed a charge with the Pennsylvania Commission on Human Relations ("PCHR") on June 11, 1990 regarding defendant's failure to pay her for the out of class work she allegedly performed.[2] On October 15, 1990, plaintiff filed a second charge with the PCHR regarding defendant's alleged retaliation against plaintiff for having filed the first charge. Both of these charges were also submitted to the E.E.O.C. pursuant to a worksharing agreement between the two agencies. The PCHR investigated both charges and determined that they had not been substantiated. It then recommended that the cases be closed, and the E.E.O.C. accepted that recommendation. Thereafter, on November 11, 1990, plaintiff received a "right to sue" letter from the E.E.O.C., explaining that it had accepted the recommendations of the PCHR.

Plaintiff claims that this Court has jurisdiction over this matter. She does not attempt to argue that she ever filed a charge with the PHRC, rather, she bases her argument on the existence of two worksharing agreements. Plaintiff argues that essentially she filed a charge with the PHRC because the PCHR and the E.E.O.C. have a worksharing agreement, whereby charges filed with one agency can be considered by both agencies if the complainant indicates such a desire. When she filed with the PCHR, those charges were also considered by the E.E.O.C. Further, the E.E.O.C. and the PHRC also have a worksharing agreement. Plaintiff contends that based on these two agreements, her charge was dually filed with both the E.E.O.C. and the PHRC when she originally filed with the PCHR.

Plaintiff is correct in her assertion that both of these worksharing agreements exist. However, there is no indication from the record that a charge was ever filed with the PHRC. In support of her contentions, plaintiff submits copies of the charges filed with PCHR, which in turn were filed with the E.E.O.C. She also submits a worksharing agreement between PHRC and the E.E.O.C. Further, the record contains plaintiff's right to sue letters from the E.E.O.C. These alone, however, do not demonstrate that the PHRC ever considered plaintiff's charge, or ever received it for that matter.

In the worksharing agreement between the E.E.O.C. and the PHRC, plaintiff underlined the following paragraph: "A charge filed on the PHRC Complaint Form which meets EEOC's jurisdictional and procedural requirements and which is referred to EEOC by PHRC for dual-filing will be considered as a charge filed with EEOC." Worksharing Agreement, para. II. c. However, this does not demonstrate that a charge was filed with PHRC. First, the charge was filed on an E.E.O.C. complaint form, and not a PHRC complaint form as this paragraph indicates. Further, there is no paragraph which suggests the opposite meaning, ie., that a charge filed with E.E.O.C. will be considered by the PHRC for dual-filing. Instead, the worksharing agreement states:

Where EEOC defers a charge for which PHRC is to be the initial processor, EEOC will notify the Charging Party of the deferral and of the address and telephone number of the appropriate PHRC Regional Office. If a PHRC Complaint form has not been completed by EEOC, EEOC will encourage the Charging Party to contact the appropriate PHRC Regional Office immediately to file the complaint with PHRC.

Worksharing Agreement, para. II. g.

Plaintiff does not submit any letter that she received from the E.E.O.C., urging her to file a complaint with PHRC, or indicating that her charge would be dually filed or deferred to PHRC. Moreover, she does not testify to any notification by the E.E.O.C. regarding such actions in her deposition. In fact, her deposition testimony indicates that the only basis for her contention is the existence of the worksharing agreement between the E.E.O.C. and PHRC. When asked by defense counsel when and if she filed a charge with PHRC, she stated she did not remember in response to both questions. At this point plaintiff's attorney then stated that a charge filed with E.E.O.C. would automati-

---

**2.** It must be emphasized that the PCHR *is not* the same as the PHRC.

cally be filed with PHRC. Plaintiff's deposition, pages 52–53.

Based on the above evidence, we will grant summary judgment for the defendant with regard to plaintiff's claims under the PHRA. Plaintiff has presented no evidence that E.E.O.C. ever transmitted the charge to PHRC for filing, and the existence of the worksharing agreement alone is not evidence that the charge was filed with PHRC. Further, the right to sue letter from the E.E.O.C. only demonstrates that plaintiff exhausted her administrative remedies regarding her Title VII claims. Thus, plaintiff has not exhausted her administrative remedies under the PHRA, and as a result, we do not have jurisdiction over this matter.

## II. Claims of discrimination under 42 U.S.C. § 1981

Defendant claims that plaintiff has failed to state a viable cause of action under 42 U.S.C. § 1981 ("section 1981"). Before addressing this contention, it must first be decided whether or not the 1991 amendments to the Civil Rights Act should be given retroactive effect in this case because plaintiff's cause of action arose prior to enactment of the amendments.

■ This Court and other courts in this circuit have previously addressed this issue at length. *See Clark v. Sears, Roebuck and Co.*, 827 F.Supp. 1216 (E.D.Pa.1993); *Cohen v. Austin*, 826 F.Supp. 922 (E.D.Pa.1993); *Aiken v. Bucks Ass'n for Retarded Citizens, Inc.*, 799 F.Supp. 522 (E.D.Pa.1992). The general consensus has been that there is no indication from the statute itself as to whether the 1991 amendments should be applied retroactively or prospectively. *Cohen*, 826 F.Supp. at 924; *Aiken*, 799 F.Supp. at 528–529. Nor has the Third Circuit given us any guidance on this matter.[3] *Cohen*, 826

F.Supp. at 922. As such, courts have been applying the amendments prospectively when application of them would affect rights or obligations of the parties which were existing prior to the amendments. *Clark*, 827 F.Supp. at 1220. Thus, it is necessary to look at three factors in order to make this determination: the nature of the parties and whether the matter involves private parties or whether it involves matters of great national concern, the nature of their rights, and whether the defendant's conduct would have been altered had he known about the new statutory obligation. *Id.* at 1221.

■ Based upon these three factors, we conclude, as we did in *Clark* and *Cohen*, that retroactive application of the 1991 amendments is not warranted in this case. First, this is a case involving only private individuals: an employee and her employer, and it does not involve matters of great national concern. Second, the nature of the rights of the parties is such that plaintiff's rights are not prejudiced by prospective application of the amendments, whereas defendant's rights may be prejudiced by retroactive application in light of the increased legal relief available to plaintiff such as compensatory and punitive damages and the right to a jury trial. *Aiken*, 799 F.Supp. at 531–32. Finally, assuming that plaintiff's allegations of discrimination are true, it is likely that defendant would have altered its conduct had the amendments been effective at the time defendant's purportedly unlawful conduct occurred. *Id.* at 532.

■ Having held that retroactive application of the 1991 amendments would create injustice in this case, we still must consider plaintiff's claims in light of the pre–1991 version of the Civil Rights Act. Although plaintiff raises two claims of discrimination under section 1981,[4] the pre–1991 version of section

---

**3.** Out of eight circuit courts of appeals which have addressed this issue, seven circuits have found in favor of prospective application. *Cohen*, 826 F.Supp. at 922 n. 2 [citations omitted].

**4.** In its motion for summary judgment, defendant also states that plaintiff's retaliation claim is not actionable under the pre–1991 version of the Civil Rights Act. While this assertion is true, *see James v. International Business Machines Corp.*,

737 F.Supp. 1420, 1425 (E.D.Pa.1990) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 177, 109 S.Ct. 2363, 2373, 105 L.Ed.2d 132 (1989)), we do not find that plaintiff has adequately plead an allegation of retaliation in the complaint. *See infra*, section V.B. Further, plaintiff does not even address defendant's contention in her response to the motion for summary judgment. Therefore, we will not consider

1981 only contemplates jurisdiction over claims arising out of the formation of contracts, and does not apply to post-formation conduct that may arise out of the conditions of continuing employment. *Patterson v. McLean Credit Union,* 491 U.S. 164, 175, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989); *James v. International Business Machines Corp.,* 737 F.Supp. 1420, 1425 (E.D.Pa.1990). For example, claims of racial harassment, as well as racially motivated discharge, are not actionable under section 1981, because both of these actions are conduct which occurs after the formation of the employment contract; and do not interfere with the employee's right to form contracts. *Aiken v. Bucks Ass'n for Retarded Citizens, Inc.,* 799 F.Supp. 522, 526 (E.D.Pa.1992) (citing *Patterson,* 491 U.S. at 169–78, 109 S.Ct. at 2369–73; *Hayes v. Community General Osteopathic Hosp.,* 940 F.2d 54, 56 (3rd Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992)). As such, plaintiff's claim of discrimination for failing to pay her for out of class work must fail, as this claim does not involve the formation of a contract, rather, it involves post-formation conduct that arises out of the conditions of continuing employment.

Plaintiff's only remaining claim under section 1981 is her failure to promote claim. In *Patterson,* the Court held that failure to promote claims were actionable under section 1981 if the nature of the change in employment was such that it would constitute a "new and distinct" relationship between the employer and employee. *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377; *James v. International Business Machines Corp.,* 737 F.Supp. 1420, 1425 (E.D.Pa.1990). Neither plaintiff nor defendant has addressed whether plaintiff's failure to promote claim is actionable under section 1981 based on this test. However, in light of the fact that summary judgment for defendant is proper with respect to

this issue, we need not decide whether being promoted to director of AHSP/NEXUS constitutes a new and distinct relationship.

 In a section 1981 case, the showing of discrimination is the same as for a Title VII case. *Lewis v. University of Pittsburgh,* 725 F.2d 910, 915 n. 5 (3rd Cir.1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984). In either case, the plaintiff must demonstrate that the discrimination was purposeful. *Weldon v. Kraft, Inc.,* 896 F.2d 793, 796 (3rd Cir.1990). Absent direct evidence of discrimination, plaintiffs can establish intent by meeting the following test as set out by the U.S. Supreme Court and adopted by this circuit. *Id.* at 796–97. The plaintiff must first show a *prima facie*[5] case of discrimination. *Id.* at 797; *Lewis,* 725 F.2d at 914 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once this has been established, the burden then shifts to the employer to establish a legitimate reason for taking the alleged discriminatory action. *Weldon,* 896 F.2d at 797; *Lewis,* 725 F.2d at 914. Once this has been established, it is up to the plaintiff to establish that the employer's nondiscriminatory reason was merely pretextual. *Weldon,* 896 F.2d at 797, *Lewis,* 725 F.2d at 914.

 To sustain a motion for summary judgment, the plaintiff need not meet this burden; rather, she must show that there is a genuine issue of material fact as to whether the employer intentionally discriminated against her. *Weldon,* 896 F.2d at 797. Likewise, in order for the defendant to prevail in a summary judgment motion, it must show that plaintiff is unable to show an intent to discriminate either directly or indirectly by showing that the reason given by the employer is subject to factual dispute. *Hankins v. Temple University,* 829 F.2d 437, 440–41 (3rd Cir.1987). A plaintiff who has made a

---

any claims of retaliation by defendant in this section.

**5.** The elements of a *prima facie* case of discrimination are as follows: 1) the plaintiff is a member of a racial minority; 2) she applied and was qualified for the available position; 3) despite her qualifications, the employer rejected her; 4) and after the rejection, the employer continued

to keep the position open and accepted applications from persons with the same qualifications as the plaintiff, or hired a white person. *Lewis,* 725 F.2d at 914 n. 4 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973)); *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989).

*prima facie* showing of discrimination will prevail on a summary judgment motion if she can demonstrate that the employer's proffered explanation is not credible. *Weldon,* 896 F.2d at 797.

■ Considering all of the evidence in this case, and viewing it in a light most favorable to plaintiff, we hold that plaintiff cannot withstand summary judgment in this case because there is no evidence from which a jury could determine that defendant intended to discriminate against plaintiff when it failed to appoint her as director of AHSP/NEXUS. From the record, the evidence shows that plaintiff began doing some of the work of the former director of AHSP/NEXUS after he resigned on November 26, 1989. At that time, plaintiff was employed as a DUI Case Manager by the defendant.[6] When the director's position opened up sometime thereafter, plaintiff submitted her application for the position. She then received a postcard from the City of Philadelphia's personnel department, stating that she did not meet the requirements for the job.

In order to be qualified for the position, one of the things required by the defendant's job specification was that the person must have a bachelor's degree. Although plaintiff eventually attained her master's degree from Lincoln College funded in part by defendant, she did not have *any* degree at the time she applied for the job, and in fact, was accepted to the master's program through testing in lieu of having a bachelor's degree. Plaintiff thus was never interviewed for the position, and Angel Medina, an hispanic man who had a bachelor's degree from Antioch University, was later hired as the director of AHSP/NEXUS.

In her complaint, plaintiff alleges she was discriminated against by defendant "with the design, intent, and/or effect being to continue [defendant's] policy, practice and/or custom of maintaining an all White male Executive Staff." Plaintiff's complaint, para. 17. She also alleges that Mark Bencivengo, the acting executive director, refused to appoint her to the position of director because of her lack of a bachelor's degree, despite his having the power to eliminate that requirement. Plaintiff's complaint, para. 14. Further, she alleges that Bencivengo had previously appointed a white male to the position of deputy director, despite his only having a bachelor's degree when the job required a master's degree at the time. *Id.* at para. 14.

The evidence presented by plaintiff in her deposition, however, does not comport with the allegations in her complaint. Regarding the makeup of the executive staff, plaintiff testified that prior to a departmental reorganization, there had been a white female and a black male on the staff. When Angel Medina was hired, he also became a member of the staff. Thus, while the staff may have consisted of all white males at the time plaintiff applied for the position, that certainly was not always the case. Moreover, the fact that defendant hired an hispanic man clearly shows that it was not defendant's intent to have a staff consisting of all white males.

■ Plaintiff contends that the fact that defendant hired Mr. Medina shows its discriminatory animus because an hispanic male is considered to be a white male. Without intending to be insensitive to such persons, it is well known that persons of hispanic descent are considered to be minorities in the United States. For instance, people are frequently encouraged to provide their ancestry or race on job applications, with the choices usually consisting of categories of white, black, Asian, Hispanic, Native American and Other. In fact, nowadays employers are encouraging hispanic persons as well as black persons and women to apply for positions as part of the growing trend to hire minorities because of equal employment opportunity laws. That hispanic persons are not consid-

---

**6.** While plaintiff alleges in her complaint that at all relevant times she was employed as a DUI case manager by defendant, in her deposition she refers to her position as an addiction outreach worker II. It appears, however, that these two positions are one in the same. Moreover, although plaintiff claims she was appointed to the position of DUI Coordinator in her response to the motion for summary judgment, there is no indication in the record that she was appointed as such, nor does plaintiff present any evidence of this claim. Thus, we decline to consider it for purposes of deciding this motion.

ered to be in the same racial classification as white persons is further evidenced by the fact that claims for racial discrimination by hispanic people have been recognized in courts of law. *See e.g. Rosario–Olmedo v. Community School Board,* 756 F.Supp. 95 (E.D.N.Y.1991) (court denied defendant's motion for summary judgment regarding discrimination claims under §§ 1981 and 1983 because genuine issues of material fact existed as to whether employer had discriminatory motive in passing over hispanic woman for the position of assistant principal in favor of black woman). As such, we reject plaintiff's contentions and take judicial notice that hispanic persons are not considered to be in the same racial classification as white persons.

Moreover, despite plaintiff's claim that Bencivengo had the authority to eliminate the bachelor's degree requirement and that he previously did so for another person, she produced no evidence to support these allegations. She did not produce any affidavits or records showing that such action had been taken in the past. Further, her deposition testimony is scant at best. She claims she was told by Bencivengo that William Thompson, the person who was hired as deputy director, did not have a master's degree. She further claims that somehow Bencivengo had the master's degree requirement eliminated for that position, and personnel signed off on that recommendation. When pressed how she knew this information, plaintiff claimed several people in personnel told her this information, although she could only name one.

On the other hand, defendant produced an affidavit of Michael McAnally, who is the personnel department manager of the city of Philadelphia. This affidavit explains in detail the process which must be undertaken in order to change a job requirement. This process shows that Bencivengo could not "unilaterally alter the [job] specifications" in order to hire Thompson. Affidavit, para. 9. Further, defendant presents evidence that the position of deputy director was altered to require a bachelor's degree instead of a master's degree through this process in August 1990. According to plaintiff's deposition and complaint, Mr. Thompson was hired either in November 1991 or in 1992. Plaintiff's complaint, para. 14; plaintiff's deposition, page 81. Thus, even considering all this evidence in the most favorable light for plaintiff, plaintiff's testimony alone does not create a genuine issue of material fact for a jury to determine that defendant discriminated against her.

Finally, and most importantly, plaintiff claims she was qualified for the position of director of AHSP/NEXUS, in part because she had been performing the tasks required by the job until Medina was hired. While she admits she did not have the requisite bachelor's degree, she asserts that she felt she was qualified for the job. However, while plaintiff may have been qualified enough to take over the position temporarily, the simple fact of the matter is that she did not meet the qualifications for the position. Defendant presents evidence that personnel would not have sent any person for an interview who did not meet the requirements. Affidavit of McAnally, para. 12. Since we have rejected plaintiff's claim that defendant could have dispensed with the degree requirement for the reasons discussed above, the objective job requirements alone show that plaintiff was not qualified for the job. *But see Weldon,* 896 F.2d 793, 798–99 (3rd Cir.1990) (failure of plaintiff to introduce evidence that he possessed subjective job qualifications as opposed to objective qualifications should not prevent him from proving a *prima facie* case since such qualifications were more likely to be subject to abuse). Thus, plaintiff has failed to make out a *prima facie* case of discrimination, and plaintiff has not presented any other evidence in which a jury could find that defendant had a discriminatory intent. As such, we grant summary judgment for defendant with respect to plaintiff's claim under section 1981.

### III. Intentional infliction of emotional distress

Defendant next argues that it is immune from suit for either intentional or negligent infliction of emotional distress by virtue of the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.Cons.Stat. §§ 8541–8564 (1982), which grants immunity to local agen-

**1118**

cies from liability for certain claims. Plaintiff's complaint alleges that "Defendant's conduct was willful, malicious, oppressive and as a direct result thereof imposed great emotional distress upon plaintiff, with the intent being to impose such emotional distress upon her...." Plaintiff's complaint, para. 27. Since this is clearly a claim for intentional infliction of emotional distress, we need not consider defendant's argument with respect to the claim for negligent infliction of emotional distress.

The TCA states that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.Cons. Stat. § 8541 (1980). The TCA provides for exceptions to this immunity if the following conditions are met:

> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or section 8546 (relating to defense of official immunity); and
>
> (2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.Cons.Stat. § 8542(a) (1982).

The acts in subsection (b) which trigger liability are acts by an agency or its employees that involve vehicle liability, the care, custody or control of personal property, real property, trees, traffic controls and street lighting, utility service facilities, streets, sidewalks and the care, custody, or control of animals. 42 Pa.Cons.Stat. § 8542(b)(1)–(8) (1982). Finally, section 8550 states:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially deter-

mined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.Cons.Stat. § 8550 (1980).

Defendant argues that it is immune from suit by virtue of the TCA because intentional infliction of emotional distress falls within the language of section 8542(a)(2) which exempts liability for acts "which constitutes [sic] a crime, actual fraud, actual malice or willful misconduct." 42 Pa.Cons.Stat. § 8542(a)(2) (1982). In essence, defendant argues that because intentional infliction of emotional distress is an intentional tort, it does not fall within one of the exceptions of section 8542.

■ Plaintiff agrees with this contention. However, plaintiff argues that defendant does not have immunity because section 8550 abrogates immunities held by agency officials for willful misconduct. While plaintiff's interpretation is correct in that section 8550 abrogates immunities with respect to individual employees and officials who are sued because of willful misconduct, *see Barnes v. City of Coatesville*, No. CIV. A. 93–1444, 1993 WL 259329 at 6 (E.D.Pa. June 30, 1993); *Kuchka v. Kile* 634 F.Supp. 502, 513 (M.D.Pa.1985); *Buskirk v. Seiple*, 560 F.Supp. 247, 252 (E.D.Pa.1983); *Lancie v. Giles*, 132 Pa.Cmwlth. 255, 572 A.2d 827, 830 (1990); *Steiner v. City of Pittsburgh*, 97 Pa. Cmwlth. 440, 509 A.2d 1368, 1370 (1986), that section does not abrogate the immunity held by the agency itself. *Barnes*, 1993 WL at 6; *Kuchka*, 634 F.Supp. at 513; *Buskirk v. Seiple*, 560 F.Supp. 247, 252 (E.D.Pa.1983); *Steiner*, 97 Pa.Cmwlth. 440, 509 A.2d 1368, 1370 (1986).

■ This conclusion is bolstered by the clear language of the statute which states that in the case of willful misconduct, sections 8545, 8546, 8548 and 8549 shall not apply. 42 Pa.Cons.Stat. § 8550 (1980). All of these sections give the individual employee the same amount of immunity as the local

agency. By stating that these sections no longer apply in situations involving willful misconduct, the statute takes away the protections given to the individual employee. The agency's immunity, however, remains intact by virtue of section 8541. *See Buskirk,* 560 F.Supp. at 252 (stating section 8550 "jettisons only those immunities held by municipal *employees* and ... does not, however, abrogate the general retention of *municipal* immunity."). Therefore, because plaintiff has not sued an individual employee in this case, she is precluded by the TCA from bringing a claim for intentional infliction of emotional distress against defendant. As such, summary judgment is granted for defendant with respect to this claim.

### IV. Wrongful discharge with specific intent to harm

In count III of plaintiff's complaint, she alleges that defendant "acted in furtherance of its specific intent to harm her and in violation of the public policy of Pennsylvania, as expressed in the [PHRA], which forbids discrimination in the terms, conditions and privileges of employment on the basis of race." Plaintiff's complaint, para. 25. Defendant now asserts that the tort of specific intent to harm in violation of public policy cannot be asserted against it, because the TCA grants defendant immunity from all types of tort claims.

Plaintiff characterizes defendant's motion for summary judgment as stating that plaintiff has asserted the tort of wrongful discharge in violation of public policy, instead of the tort of wrongful discharge with specific intent to harm. However, plaintiff states that she has brought a claim for wrongful discharge with specific intent to harm.[7] Plaintiff then states that because this is an intentional tort, defendant is not immune by virtue of section 8550 of the TCA.

 Although we agree with plaintiff that she has stated a cause of action for wrongful discharge with specific intent to harm, and that this is separate from a cause of action for wrongful discharge in violation of public policy, *see Tourville v. Inter–Ocean*

*Ins. Co.,* 353 Pa.Super. 53, 508 A.2d 1263, 1265 (1985), *allocatur denied,* 514 Pa. 619, 521 A.2d 933 (1987), plaintiff is still precluded from asserting either claim against defendant. As we discussed in the preceding section, defendant is immune from claims against it unless the conditions of section 8542 are satisfied. In this case, neither claim falls within the exceptions of section 8542, therefore plaintiff's claim must fail. Further, even though wrongful discharge with specific intent to harm is an intentional tort as plaintiff asserts, section 8550 does not abrogate the immunity granted by section 8541 to the individual agency. *See Asko v. Bartle,* No. CIV. A. No. 89–8218, 1990 WL 67212 at 1 (E.D.Pa.1990) (holding that wrongful discharge claim against defendant Montgomery County should be dismissed because of defendant's immunity under the TCA). As such, defendant is immune from plaintiff's claim of wrongful discharge with specific intent to harm, and summary judgment is granted for defendant with respect to Count III of plaintiff's complaint.

### V. Claims under Title VII

#### A. Out of class pay

 Plaintiff first claims that she was discriminated against when she was denied out of class pay for the work she assumed on behalf of Frank Colantuno when he resigned from his position as the director of ASHP/NEXUS. She further claims that Joan Birckhead, a white secretary employed by defendant, was paid for doing out of class work for the additional·duties she allegedly undertook when Colantuno resigned.

Defendant maintains that plaintiff has not shown sufficient evidence to sustain a claim of discrimination for being denied the out of class pay. First, it argues that the additional duties she describes in her deposition are those performed by an addiction outreach worker I and II, and therefore were not duties which would have warranted being paid out of class. Second, defendant argues that plaintiff admits in her deposition that the personnel department audited her posi-

---

7. Interestingly, plaintiff brings this claim even though she was not discharged by defendant, rather, she left voluntarily on July 20, 1992. Plaintiff's deposition, p. 68.

tion and appropriately classified it as being within the addiction outreach worker II range. Further, although the personnel department recommended that she receive a raise two steps within the classification, plaintiff acknowledges that she rejected that evaluation because she did not think that other addiction outreach worker II's should benefit from that audit. Defendant also notes that any duties performed by plaintiff which were also performed by Mr. Colantuno were extra duties which Mr. Colantuno assumed within the addiction outreach worker II classification, because a replacement could not be hired for that position. As such, defendant maintains that plaintiff has not proven she was qualified to receive out of class pay.

While defendant's characterization of plaintiff's testimony is basically correct, there still exists a genuine issue of material fact with which a jury could find evidence of discrimination for the denial of out of class pay. Simply stated, despite plaintiff acknowledging the audit by the personnel department and that some duties she performed were those originally performed by workers within her classification, plaintiff has testified that she performed other duties performed solely by Mr. Colantuno. In her deposition, plaintiff maintains that she began interacting with the Philadelphia Probation Department by attending meetings with John Buggy, who was the head of the addiction unit, and working with the court bail program. Deposition, page 60. Taking this evidence in the light most favorable to the plaintiff, a question then remains as to why she was denied out of class pay if she was actually performing the former director's duties. Defendant's audit by the personnel department alone does not answer this question, especially because defendant has not provided any evidence about the procedures the personnel department uses in making such determinations, or any affidavits by persons who conducted the audit in this case. Thus, defendant fails to demonstrate that its proffered reason for the denial of out of class pay is not subject to factual dispute. *Hankins v. Temple University,* 829 F.2d 437, 440–41 (3rd Cir.1987). As such, summary judgment is denied with respect to this issue.

### B. Retaliation

 Plaintiff further claims she was retaliated against when she filed her complaint with PCHR. We note that although defendant has addressed this issue in the motion for summary judgment, we find no evidence of this claim in plaintiff's complaint. Plaintiff's only reference to retaliation in the complaint is the following sentence: "The unlawful employment practices, discrimination and retaliation alleged herein were committed within the Commonwealth of Pennsylvania." Plaintiff's complaint, para. 6.

 Although plaintiff offers evidence of retaliation in her deposition, we note for purposes of pleading that plaintiff has failed to satisfy the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In civil rights cases, the standard for pleading is more stringent than in other types of cases. *Frazier v. Southeastern Pennsylvania Transp. Auth.,* 785 F.2d 65, 67 (3rd Cir.1986); *Scott v. Rieht,* 690 F.Supp. 368, 370 (E.D.Pa.1988). Complaints that are "broad and conclusory," *Frazier,* 785 F.2d at 67, that fail to state facts to support its allegations, *id.,* or that fail to allege the specific conduct violating plaintiff's rights, the time and place of that conduct and the identity of the responsible officials, *Colburn v. Upper Darby Township,* 838 F.2d 663, 666 (3rd Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989), are violative of the specificity standard. Given that plaintiff has stated *no facts* in her complaint relating to retaliation, plaintiff has failed to meet this specificity standard.

 Nonetheless, even considering the evidence presented by plaintiff, she has not proven there is a genuine issue of fact regarding the retaliation issue. Plaintiff supports her allegation by first stating that Mr. Medina reprimanded her and docked her pay when she returned from a conference, claiming that he had not given her permission to attend the conference. Next she argues that she was harassed by one of her supervisors,

Mark Bencivengo, after she filed the first complaint with PCHR. In her deposition, she states that he started banging on her office door and asking if she was present, and claims he stated he had heard her say that she would not interview clients anymore, when in fact she had not said that. Plaintiff's deposition, page 67.

Plaintiff's deposition also indicates that although her pay was originally docked for attending the conference, after going to Barry Savitz, head of the Civil Service Commission, her pay was restored. Finally, although she states she was not allowed to attend other conferences, she could not name these conferences. She also stated that Mr. Medina decided who could go to conferences, thus suggesting that he purposefully denied her from attending conferences. However, when asked about the policy of attending conferences before Mr. Medina came on board, plaintiff admitted that the previous director also made the decisions about attending conferences, although she claims the difference was that it was up to the individual staff members to determine whether they were qualified to go to them. Plaintiff's deposition, pages 70–71.

■ Even accepting all of plaintiff's evidence as true, we find that there is no genuine issue of fact with which a jury could find defendant intended to discriminate against plaintiff. Since the standards for proving discrimination under Title VII are the same as under section 1981, *see Lewis v. University of Pittsburgh,* 725 F.2d 910, 915 n. 5 (3rd Cir.1983), *cert. denied,* 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984), plaintiff has failed to sustain her burden with respect to the retaliation issue.

*VI. Conclusion*

In conclusion, summary judgment is granted for defendant with respect to plaintiff's claim under the PHRA (Count II), her claims under section 1981 (Count V), her state law claims for wrongful discharge with specific intent to harm (Count III) and intentional infliction of emotional distress (Count IV), and her claim for retaliation under Title VII and/or section 1981. Only plaintiff's claim of discrimination for denial of out of class pay in violation of Title VII survives summary judgment (part of Count I). An appropriate order follows.

### ORDER

AND NOW, this 7th day of October, 1993, upon consideration of defendant's motion for summary judgment and all responses thereto, it is hereby ORDERED that the motion for summary judgment is GRANTED in part and DENIED in part. Summary judgment is GRANTED for defendant with respect to Counts II, III, IV and V of plaintiff's complaint, as well as any claim for retaliation. Summary judgment with respect to plaintiff's Title VII failure to pay out of class claim (Count I) is DENIED.